Clifford JAMES, Plaintiff and Appellant,

v.

Wayne R. PRESTON, Zions First National Bank, N.A., Geneva Rock Products, Defendants and Respondent.

No. 860091–CA.

Court of Appeals of Utah.

Dec. 4, 1987.

Robert M. McRae, JoAnn B. Stringham, McRae & DeLand, Vernal, for plaintiff and appellant.

Kenneth G. Anderton, Vernal, for defendant and respondent Preston.

Richard K. Nebeker, Greene, Callister & Nebeker, Salt Lake City, for defendant Zions.

Kent B. Scott, John K. Mangun, Nielsen & Senior, Salt Lake City, for defendant Geneva.

Before BILLINGS, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

The trial court dismissed plaintiff/appellant Clifford James' suit on a trust deed on the basis that the trust deed was defective and that the debt upon which it was based was discharged in defendant/respondent Wayne R. Preston's bankruptcy action. James seeks to have the judgment of dismissal reversed.

The facts giving rise to this dispute are extremely controverted. None of the terms of the agreement were memorialized in writing, and neither party produced witnesses to substantiate his version of the facts.

Preston's version of the facts is as follows: During 1980, Preston engaged James, a Florida real estate broker, to locate $350,000 in investment funds for a real estate development located in Salt Lake City, Utah. As part of the finder's fee which James required for obtaining the loan for Preston, Preston paid $10,000 to James' partner, Patty Dean. On June 10, 1980, Preston and James met in Salt Lake City because James had told Preston that investment funds were available. During this meeting, Preston discussed the proposed development with James and took him to view the property.

After viewing the property, James gave Preston a $10,000 cashier's check, which Preston endorsed and immediately returned to James for the remainder of the required $20,000 finder's fee. Preston, himself, never personally received any of this money. At this time, James informed Preston that he might have to provide more collateral to get the investment loan. Preston told James that he had a large parcel of real property located in Vernal, Utah, which could be used as collateral. James then gave Preston a blank trust deed form and asked him to sign it, saying that he would take it with him and use it if necessary to get the loan. Preston signed it without a notary present. He did not execute a promissory note, even though the trust deed recited that the debt was evidenced by a promissory note. Subsequently, Preston's name, property description, and the dollar amount were placed on the trust deed and James was named as Trustee and Beneficiary. Preston ended up paying James $20,000, which he did not get back, and for which he did not get a loan.

James' version of the transaction is: Although James was working with Preston on the Salt Lake City real estate development, he never entered into any negotiations with Preston concerning the procurement of a loan, and never discussed payment of a $20,000 finder's fee. Dean was not his partner. During the course of their business relationship, Preston requested

that James loan him $10,000 to renew or extend the option on the Salt Lake City property. James would benefit from this business arrangement by marketing the property and receiving a broker's fee. On May 10, 1980, James met with Preston in Salt Lake City. They viewed the property and then went to Zions Bank. While at the bank, James gave Preston a cashier's check for $10,000, which came from his personal savings, to extend the option. Preston endorsed the check and placed it in an escrow account. At the time, James believed that no promissory note was necessary, so did not require Preston to execute one. The parties did not discuss an interest rate as to the $10,000 loan. The loan was to be secured by the trust deed against Preston's Vernal property. Preston did not sign a blank trust deed, but signed, before a notary public at Zions Bank, a trust deed which had been prepared by Grieg Morrison, a Utah real estate agent.

James recorded the trust deed on July 28, 1980. On November 19, 1980, Preston and his wife filed for Chapter 7 bankruptcy, listing the $10,000 indebtedness to James as an unsecured obligation.

On February 9, 1982, James brought suit against Preston, requesting that the trust deed be foreclosed as a mortgage. The trial court later dismissed the case on the grounds that the Prestons had filed for bankruptcy. On February 7, 1983, the Prestons were released from all their dischargeable debts.

After termination of the bankruptcy proceedings, James requested a trial. On April 24, 1984, the court dismissed the case, without making specific findings as to which party's story was correct, on the grounds that the trust deed was "defective and of no legal force and effect," and that the debt upon which James' lawsuit was based was discharged in Preston's bankruptcy action.

James appeals this judgment, arguing that he has an equitable mortgage on the property, and, therefore, a non-dischargeable security interest. The issues raised on appeal are: (1) whether James is barred from raising the theory of equitable mortgage on appeal because he did not raise it before the trial court; (2) if the trust deed was not legally valid, whether James should be entitled to an equitable mortgage upon Preston's real property; and (3) if James should be entitled to a finding of an equitable mortgage, whether his interest was discharged in Preston's bankruptcy.

We first address the threshold issue of whether James is barred from raising his equitable mortgage theory on appeal because he did not raise it before the trial court. In Utah, matters not raised in the pleadings nor put in issue at the trial may not be raised for the first time on appeal. *Bundy v. Century Equip. Co.,* 692 P.2d 754, 758 (Utah 1984); *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1044 (Utah 1983). A matter is sufficiently raised if it has been submitted to the trial court and the trial court has had the opportunity to make findings of fact or law. *See Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667, 672 (Utah 1982). "Theories or issues which are not apparent or reasonably discernible from the pleadings, affidavits and exhibits will not be considered." *Minnehoma Fin. Co. v. Pauli,* 565 P.2d 835, 838 (Wyo.1977). In particular, even if pleadings are generously interpreted, if they are not supported by any factual showing or by the submission of legal authority, they are not presented for decision. *Int'l Business Mach. Corp. v. Lawhorn,* 106 Idaho 194, 677 P.2d 507, 510 (1964). Further, the rule that a legal theory may not be raised for the first time on appeal is "to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial." *Bogacki v. Bd. of Supervisors,* 5 Cal.3d 771, 489 P.2d 537, 543–44, 97 Cal. Rptr. 657, 663–64 (1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1301, 31 L.Ed.2d 488 (1972); *see also Campbell v. Graham–Armstrong,* 9 Cal.3d 482, 509 P.2d 689, 107 Cal.Rptr. 777 (1973); *Church v. Roemer,* 94 Idaho 782, 498 P.2d 1255, 1258–59 (1972).

In his reply brief, James indicates that in his complaint he specifically requested a "judgment of foreclosure foreclosing out all rights of defendants in and to said realty and for an Order of Sale treating said Trust Deed as a mortgage and for the entry of such other orders as are necessary and just to foreclose out all of defendants' interest in said realty." Also, at trial, his attorney, after the conclusion of Preston's case and at the end of his closing argument, stated that "the trust deed can be deemed a mortgage, and therefore it does have some security valuation. A mortgage granted by statute is a waiver of homestead rights in this trust deed,[1] or this document which was recorded prior to the homestead." No other references were made to mortgages or equitable mortgages in the pleadings or trial proceedings.

James supplied no legal authority dealing with equitable mortgages nor any showing of the relevance of the facts to an equitable mortgage theory during the course of the trial. The trial court made no ruling as to the existence of an equitable mortgage, and James made no objection to this omission. Although James' attorney did mention the term "mortgage" on two occasions in the lower proceedings, such an oblique, subtle reference to a legal doctrine is insufficient to have raised the issue in the lower court proceedings. For an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it. Because the issue of equitable mortgage was not sufficiently raised below, we will not consider it on appeal.

Because this threshold issue disposes of the case, it is unnecessary to consider James' other assignments of error. Judgment affirmed. Costs to respondent.

BILLINGS and JACKSON, JJ., concur.

---

1. Prior to the Prestons' filing for bankruptcy, Mrs. Preston filed a declaration of homestead pursuant to Utah Code Ann. § 78-23-4 (1977).