Sheryl Lynne DANSIE, Plaintiff
and Appellant,

v.

ANDERSON LUMBER CO.; Belwith International; Judson Pierson; E. Gregory Higley; Clearfield Realty, Inc., a Utah corporation; and Sanderson Sales, Defendants and Appellees.

No. 930068–CA.

Court of Appeals of Utah.

July 13, 1994.

Reid Tateoka, Harry Caston, and Allan O. Walsh, Salt Lake City, for appellant.

William J. Hansen, and Mark L. Anderson, Salt Lake City, for appellees.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Sheryl Lynne Dansie appeals the trial court's order granting Belwith International's motion to dismiss and Anderson Lumber Company's motion for summary judgment. Dansie argues that the trial court applied the wrong statute of limitations in barring her personal injury claim. We affirm.

## STANDARD OF REVIEW

█ In reviewing the trial court's grant of Belwith International's motion to dismiss, we accept the material allegations of the complaint as true and will affirm the trial court's decision only if it appears Dansie cannot prove any set of facts in support of her claim. *Hansen v. Department of Fin. Insts.*, 858 P.2d 184, 185–86 (Utah App.1993). In reviewing the trial court's grant of Anderson Lumber Company's motion for summary judgment, we view the facts and the inferences drawn therefrom in the light most favorable to Dansie and will affirm only if Anderson Lumber is entitled to judgment as a matter of law. *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993).

█ The trial court held that Utah Code Ann. § 78–15–3 (1977), a part of the products liability statute that existed on the date of Dansie's injury, did not apply to her case. We review this determination as a question of law, employing a correction of error standard and affording the trial court no particular deference. *Hansen*, 858 P.2d at 186.

## FACTS

The material facts are not in dispute. In December of 1985, Judson Pierson, a general contractor, and E. Gregory Higley, President of Clearfield Realty, completed the construction of a house which was subsequently purchased by Dansie and her husband. As part of the construction, a handrail was installed along the stairway going from the main floor to the upper level of the home. While walking down the stairs only a few days after taking possession of the house, Dansie grasped the handrail for support, at which time a bracket securing the handrail broke, sending her falling down the stairs. As a result of the fall, Dansie suffered serious injuries.[1]

On August 18, 1988, Dansie filed a complaint alleging that Pierson, Higley, and Clearfield Realty[2] negligently constructed the staircase by installing a defective bracket and breached the implied warranty of fitness in that the house was not fit for the purpose for which it was sold. Dansie immediately served interrogatories and a request for production of documents through which she sought the identities of the manufacturer of the bracket and the party who had sold it to Pierson and/or Higley.

Pierson and Higley signed their discovery answers on October 5, 1988, but failed to forward them to Dansie. Pierson's and Higley's failure to respond to these discovery requests eventually prompted Dansie to file a motion to compel, albeit not until over a year later. The trial court granted Dansie's motion and ordered Pierson and Higley to respond to the discovery requests by January 10, 1990.

---

1. Dansie ruptured two disks in her back and alleges that her damages total at least $1,000,000.

2. Because it is undisputed that Clearfield Realty is Higley's alter ego, we omit further reference to Clearfield Realty.

On January 12, Dansie received Pierson's and Higley's discovery responses, which indicated that Pierson had purchased the bracket from Anderson Lumber, but these answers did not disclose the identity of the manufacturer. On April 17, 1990, Dansie filed her amended complaint naming Anderson Lumber Company as the seller of the allegedly defective bracket.

After serving Anderson Lumber with a set of interrogatories seeking the identity of the bracket's manufacturer and receiving answers thereto, Dansie discovered that Belwith International manufactured the allegedly defective bracket. On January 7, 1991, Dansie filed her second amended complaint naming Belwith International as the bracket's manufacturer.[3]

## COURSE OF PROCEEDINGS BELOW

In March and April of 1992, respectively, Belwith International and Anderson Lumber moved the trial court to dismiss Dansie's complaint against them. They contended that Dansie's claim was barred by the four-year statute of limitations found in Utah Code Ann. § 78–12–25(3) (1992), which governs all civil actions not covered by a more specific statute. Dansie opposed these motions and contended that her claim should not be dismissed because Utah Code Ann. § 78–15–3 (1977), the "statute of limitations" contained within the Product Liability Act existing on the date of her injury, entitled her to bring her action within six years from the date the defective product was purchased or ten years from the date the defective product was manufactured. Thus, even though the Utah Supreme Court ruled, mere weeks after the accident, that section 78–15–3 violated the "open courts" provision of the Utah Constitution,[4] see Berry ex rel. Berry v. Beech Aircraft Corp., 717 P.2d 670, 680 (Utah 1985), Dansie argued that the decision should not affect the limitation period governing her claim.

Belwith and Anderson responded that Dansie filed her claim after the former product liability statute was ruled unconstitutional by the Utah Supreme Court, on December 31, 1985, and before the current product liability statute of limitations was enacted by the Utah Legislature on April 24, 1989.[5] Belwith and Anderson contended that once the Court declared the prior statute unconstitutional, it became null and void and could not be applied "retroactively." See Malan v. Lewis, 693 P.2d 661, 676 (Utah 1984). Thus, Belwith and Anderson argued that the trial court should apply section 78–12–25(3), the general four-year statute, as the only viable statute of limitations available. See Millett v. Clark Clinic Corp., 609 P.2d 934, 936 (Utah 1980); Bateman v. Board of Examiners, 7 Utah 2d 221, 322 P.2d 381, 389 (1958).

The trial court granted appellees' motions,[6] reasoning that because the Utah Supreme Court declared section 78–15–3 unconstitutional prior to the time Dansie filed her initial complaint against Pierson and Higley, she could not rely on the "limitation" period contained in that section, and the four-year statute of limitations barred her action as of December 6, 1989.[7] Thus, the court deter-

3. The second amended complaint also named Sanderson Sales, the distributer of the bracket, as a defendant. The trial court granted Sanderson Sales's motion for summary judgment on the basis that Dansie's claims against it were barred by the applicable statute of limitations. The trial court's order granting Sanderson Sales's motion for summary judgment has not been appealed.

4. In so holding, the Utah Supreme Court invalidated the entire Utah Product Liability Act because § 78–15–3 was considered inseverable from the balance of the Act. See Berry ex rel. Berry v. Beech Aircraft Corp., 717 P.2d 670, 685–86 (Utah 1985).

5. See Utah Code Ann. § 78–15–3 (1992) (providing that product liability actions must be brought within two years from time claimant discovered,

or should have discovered, both harm and cause).

6. The trial court certified its order dismissing Belwith and Anderson as a final judgment pursuant to Rule 54(b) of the Utah Rules of Civil Procedure.

7. Before the trial court, Dansie argued that Rule 15(c) of the Utah Rules of Civil Procedure allowed her to name Belwith and Anderson in her amended complaints and have these amendments relate back to the date she filed the original complaint for the purpose of satisfying the statute of limitations. The trial court correctly determined that "the relation-back doctrine does not apply to an amendment that adds new parties who have no identity of interest with existing

mined that before Belwith and Anderson had been made parties to the action, Dansie's claims against each of them had become barred by the four-year statute of limitations.[8]

### ISSUES AS FRAMED BY PARTIES

Consistent with her position below, Dansie's primary contention on appeal is that the "statute of limitations" in effect at the time of her injury gave her a vested right to bring her action within six years of purchasing the allegedly defective bracket or within ten years from the date the bracket was manufactured. Appellees join the issue on Dansie's terms, debating the propriety of applying Utah Code Ann. § 78–15–3 (1977) many years after it had been judicially invalidated.

In addition, Dansie argues that even if the trial court was correct in its decision to apply the four-year statute of limitations, Belwith and Anderson should be estopped from benefiting from the four-year limitation period because Pierson and Higley hindered the discovery process and unjustly prevented Dansie from discovering appellees' identities within the limitation period.[9]

### STATUTES OF LIMITATION AND OF REPOSE

The real issue in this case has apparently eluded both sides. The parties in making their arguments and, indeed, the trial court in making its decision, failed to focus on the fundamental distinction between statutes of limitations and statutes of repose. As noted by the Utah Supreme Court,

"[s]tatutes of repose, such as section [78–15–3,] are different from statutes of limitations, although to some extent they serve the same ends." A statute of limitations requires a law suit to be filed within a specified period of time after a legal right has been violated.... On the other hand, statutes of repose are designed to bar actions after a specified period of time has run from the occurrence of some event other than the injury which gave rise to the claim. Since a statute of repose begins to run from a date unrelated to the injury (for example the date of purchase), it is not designed, as are statutes of limitations, to necessarily allow a "reasonable" time in which to file a lawsuit. A statute of repose might theoretically cut off a claim filed within the period allowed by the relevant statute of limitations.

*Raithaus v. Saab–Scandia of America, Inc.,* 784 P.2d 1158, 1160 (Utah 1989) (quoting *Berry ex rel. Berry v. Beech Aircraft,* 717 P.2d 670, 672 (Utah 1985) (citations omitted)). *See also Lee v. Gaufin,* 867 P.2d 572, 575–76 (Utah 1993) (distinguishing between statutes of limitations and statutes of repose); *Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1090 (Utah 1989) (same); *Verlarde v. Board of Review,* 831 P.2d 123, 125–26 (Utah App. 1992) (same).

Furthermore, different objectives underlie these two types of statutes:

"Historically, statutes of limitation prevented plaintiffs from sleeping on their legal rights to the detriment of defendants. The focus in the traditional statutes was upon the conduct of the plaintiff. If the plaintiff did not bring his cause of action in a timely manner, the statute of limitation deprived him of the opportunity to seek judicial redress for an otherwise valid claim. Statutes of repose, however, focus

---

parties." *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 217 (Utah 1984). Dansie does not press her relation-back argument on appeal.

8. The accident in this case occurred on December 6, 1985. The Supreme Court's *Berry* decision was announced twenty-five days later. Under the trial court's view, Dansie still had three years and eleven months after *Berry* came down in which to timely file her complaint against Belwith and Anderson.

9. Dansie also points to our decision in *Aragon v. Clover Club Foods Co.,* 857 P.2d 250 (Utah App.

1993), to support her claim that the discovery rule in a products liability lawsuit tolls the limitation period "until the plaintiff discovers, or in the exercise of due diligence should have discovered, the identity of the manufacturer." *Id.* at 253. *See* Utah Code Ann. § 78–15–3 (1992). However, the "discovery rule" argument was not raised before the trial court and therefore was not preserved for appeal. *See Trimble Real Estate v. Monte Vista Ranch, Inc.,* 758 P.2d 451, 456 & n. 4 (Utah App.), *cert. denied,* 769 P.2d 819 (Utah 1988).

on the age of the product rather than on the plaintiff's conduct. They absolutely bar all claims when products exceed the statutory age limitation and completely deprive a plaintiff of his rights merely because he has been injured by an older product."

*Raithaus,* 784 P.2d at 1160–61 (quoting Dickson, *The Statute of Limitations in North Dakota's Products Liability Act: An Exercise in Futility?,* 59 N.D.L.Rev. 551, 556–57 (1983)).

The *Raithaus* court was faced with an issue similar to the one now before us. In *Raithaus,* the plaintiff alleged that his wife's death was caused by a defective car. *Id.* at 1159. The trial court granted the defendant summary judgment because the plaintiff's action was not brought within the two-year limitation period allowed under the wrongful death statute. *Id.* at 1159–60. *See* Utah Code Ann. § 78–12–28(2) (1977). The plaintiff argued on appeal that he had six years in which to bring the action against the defendant because the six-year "limitation" period in Utah Code Ann. § 78–15–3 (1977) superseded the two-year limitation period in the wrongful death statute. *Raithaus,* 784 P.2d at 1160. Recognizing that "the goals, functions, and characteristics of each type of statute differ," the Court noted that "statutes of repose and statutes of limitation are not interchangeable" and expressly held that section 78–15–3 is a statute of repose. *Id.* at 1161. Accordingly, the Court refused to apply the six-year statute of repose as a statute of limitations, and thus ruled that plaintiff's claim was time-barred because it was not brought within the two-year limitation period applicable to wrongful death actions. *Id.* at 1161–62.

■ The message of *Raithaus* is clear: a statute of repose supplements rather than replaces a statute of limitations. *See id.* at 1160–63. The statute of limitations governing Dansie's claim allowed four years in which to bring her personal injury action, as

a claim for relief not otherwise provided for by law. *See* Utah Code Ann. § 78–12–25(3) (1992). The statute of repose set forth in Utah Code Ann. § 78–15–3 (1977) and struck down in *Berry* purported to *additionally* bar actions brought more than six years after the sale of a defective product or more than ten years after it was manufactured, even as to actions commenced within four years of injury.

■ Thus, even at the time she sustained her injury, Dansie did not have the right to bring her action against Belwith within ten years and Anderson within six years. On the contrary, she had the right to bring her action within four years, which right was purportedly subject to the further restrictions, wholly inapplicable in her circumstances, that the action, even if timely under the statute of limitations, could not be brought after the six- and ten-year periods contemplated in the statute of repose. Simply put, Dansie's claim was never impacted by the repose scheme of section 78–15–3. Therefore, the trial court correctly determined that Dansie's claims were subject to the four-year statute of limitations.

## PRIVITY AND EQUITY

■ Arguing in the alternative, Dansie contends that even if the trial court was correct in applying the four-year statute of limitations, it should not have dismissed Belwith or Anderson despite the fact that they were not named as parties until after the expiration of the four-year period. She contends that to do so allowed them to benefit unjustly from Pierson's and Higley's unconscionable delays in complying with discovery requests.

Dansie's estoppel argument is misplaced, however, because neither Belwith nor Anderson was guilty of any wrongful or misleading conduct nor in any way hid its identity or hindered Dansie in the discovery process.[10] Belwith and Anderson are not re-

10. " 'Estoppel is an equitable doctrine which precludes parties from asserting their rights where *their* actions render it inequitable to allow them to assert those rights.' " *Burrow v. Vrontikis,* 788 P.2d 1046, 1048 (Utah App.1990) (quoting

*Brixen & Christopher v. Elton,* 777 P.2d 1039, 1043–44 (Utah App.1989)) (emphasis added). Dansie calls to our attention no authority supporting her claim that a defendant should be equitably estopped from asserting a defense

sponsible for the conduct of Pierson or Higley, and thus should not be deprived of the protections of the statute of limitations because of the actions of unrelated third parties. In order for Dansie to prevail on her theory, she would have to point to facts sufficient to show a connection between Belwith and Anderson and the dilatory tactics of Pierson and Higley. *See Rice v. Granite Sch. Dist.*, 23 Utah 2d 22, 456 P.2d 159, 161–64 (1969). *See also Vincent v. Salt Lake County*, 583 P.2d 105, 106–07 (Utah 1978) (summary judgment inappropriate despite failure to file timely notice of claim when plaintiff alleged state's *agent* erroneously told him runoff culvert could not have caused damage to his property). *Cf. Warren v. Provo City Corp.*, 838 P.2d 1125, 1129–30 (Utah 1992) (absent any misrepresentations by *defendant*, plaintiff must take reasonable steps to pursue claim in timely manner). However, Dansie has failed to establish facts that suggest Belwith and Anderson maintained any type of relationship or engaged in any course of conduct such that it would be proper to impute Pierson's and Higley's actions to them.[11] Dansie's equitable estoppel argument is therefore untenable.

 Dansie further claims that given the facts of this case it would be inequitable to mechanically apply the four-year limitations period so as to bar her action. However, Dansie waited more than two and one-half years after her accident to file the original complaint and then delayed in naming the seller and manufacturer of the bracket for another twenty and twenty-eight months, respectively. Even if there were some good reason for waiting over two and one-half years to file her initial complaint, Dansie had it within her power to compel the answers to her discovery requests, identify appellees, and name them in her complaint more expeditiously than she did.[12]

We agree with Dansie's general assertion that a statute of limitations will not be mechanically applied when it is grossly unfair to do so. *See Rice,* 456 P.2d at 165. In *Rice,* the defendant's agent deceived the plaintiff into believing her claim would be settled, then after the limitations period had expired the defendant reneged on its promise to settle. *Id.* Understandably, the Court did not allow the defendant to assert the statute of limitations as a defense. If the actions of a defendant, its agents, or its privies induced delay in commencing an action, the court will not allow any of them to assert such delay as a defense. *Id.* at 163.

The instant case, however, is distinguishable from *Rice* in that appellees did not engage in misleading conduct or themselves hinder the discovery process. Accordingly, we conclude that the trial court correctly applied the four-year statute of limitations and properly dismissed Belwith and Anderson from this action.

## CONCLUSION

We affirm the trial court's order dismissing appellees Belwith and Anderson from this action. A statute of repose supplements a statute of limitations; it does not replace it. Therefore, even if the statute of repose found unconstitutional in *Berry* somehow applied to Dansie's case, those periods of repose do not supplant the limitations period governing her claims. Dansie failed to name Belwith or Anderson within the four-year limitations period, and therefore her action against them is barred. Moreover, the allegedly wrongful conduct of Pierson and Higley is an insufficient basis on which to impute their behavior to Belwith or Anderson and thereby deprive appellees of the protection of the four-year limitations period. Nor is it grossly unfair to apply the statute to Dansie since Belwith and Anderson did nothing to contribute to her

---

based on the wrongful action of unrelated third parties.

11. Dansie simply contends that Belwith and Anderson were in the chain of distribution of a defective product. This alone does not sufficiently connect appellees to the actions of Pierson and Higley for purposes of applying the estoppel doctrine against them.

12. Dansie eventually did move the trial court for an order compelling Pierson's and Higley's response to her discovery requests. However, she waited almost 15 months after filing her initial complaint to do so. By the time the trial court granted the motion to compel, the four-year limitations period had already run.

delay in filing against them. Accordingly, we affirm.

GREENWOOD and JACKSON, JJ., concur.