Roland HOLMAN, an individual dba Andersen's Ford, Inc., and Andersen's Ford, Inc., a Utah corporation, Plaintiffs and Appellants,

v.

CALLISTER, DUNCAN & NEBEKER fka Greene, Callister & Nebeker, a Utah corporation, Defendant and Appellee.

No. 940486–CA.

Court of Appeals of Utah.

Oct. 26, 1995.

Richard C. Dibblee, Salt Lake City (argued), for Appellants.

Cynthia K.C. Meyer (argued) and Stephen G. Morgan, Salt Lake City, for Appellee.

Before ORME, GREENWOOD and WILKINS, JJ.

## OPINION

GREENWOOD, Judge:

In this consolidated appeal, Roland Holman and Andersen's Ford, Inc. appeal two orders of two district court judges dismissing their malpractice claims against Callister, Duncan, and Nebeker (Callister). We affirm.

## BACKGROUND

Because we are reviewing motions to dismiss, we recite the facts of this case in a light most favorable to appellants. *Dansie v. Anderson Lumber Co.,* 878 P.2d 1155, 1156 (Utah App.1994). We note that Callister's view of the facts is less egregious.

Andersen's Ford, Inc. was a used car dealership in Brigham City, Utah. Holman was company president and majority stockholder. Beginning in January 1979, Andersen's Ford, Inc. experienced severe financial difficulties and, as a result, failed to pay state and federal taxes. On September 30, 1982, the State of Utah dissolved the company for failure to pay state taxes. Nonetheless, Hol-

man continued to operate the business under the same name, Andersen's Ford, Inc.

In late 1982, the Internal Revenue Service demanded immediate payment of back taxes and threatened to seize assets belonging to the company. During April of 1983, Holman consulted with Callister, and Callister recommended that Andersen's Ford, Inc. file a petition in U.S. Bankruptcy Court to reorganize under Chapter 11 of the U.S. Bankruptcy Code. Holman claims that Callister advised him that a Chapter 11 bankruptcy would allow the IRS taxes to be paid under the supervision of the U.S. Bankruptcy Court. On May 2, 1983, Callister filed a Chapter 11 petition on behalf of Andersen's Ford, Inc.

The IRS filed a claim in Andersen's Ford, Inc.'s bankruptcy proceedings for $154,-004.83, which was later amended to $127,-403.09. This claim was disputed, but the confirmed plan of reorganization provided that the, as-yet-undetermined, IRS claim would be paid over a five-year period, with annual payments of 20% of the allowed claim plus interest. The IRS participated in the plan confirmation hearing and knew of the approved plan's terms.

In 1984, after the bankruptcy court approved the reorganization plan, a settlement was reached with the IRS for the payment of $56,000 in delinquent taxes. Holman claims Callister failed to include this settlement agreement amount as part of the record in the bankruptcy court either by incorporating the amount of the settlement in an amendment or addendum to the reorganization plan or by filing an appropriate petition or motion. Holman claims this failure resulted in a later demand by the IRS for approximately $122,-000 in additional payments for taxes, interest and penalties.

The IRS would not abide by the earlier settlement. Holman hired a different law firm to represent the company in further bankruptcy proceedings because the Callister attorneys were needed as witnesses to the settlement negotiations with the IRS. The new law firm filed an adversary proceeding, claiming the IRS was bound by the terms of the settlement. Following a bench trial, the bankruptcy court determined that the IRS was bound by the 1984 settlement agreement, but that Andersen's Ford, Inc. had underpaid the agreed-upon amount by $21,-000.

Two civil complaints were filed against Callister: First, by Andersen's Ford, Inc. as plaintiff, on July 14, 1993, and second, by Holman, dba Andersen's Ford, Inc., on January 7, 1994. Each complaint alleged that Callister committed legal malpractice by failing to incorporate the settlement agreement into the bankruptcy court record. Both lawsuits alleged damages of $96,000—$75,000 in attorney fees and accounting costs and $21,-000 for the assessment of additional taxes.

The Andersen's Ford, Inc. suit was assigned to Third District Court Judge Leslie A. Lewis. Callister filed a motion to dismiss and/or for summary judgment. Judge Lewis dismissed the case on December 21, 1993, stating that Andersen's Ford, Inc.'s claim was barred because it arose after corporate dissolution and the suit was not part of corporate wind-up activities.

The second case, filed by Holman personally, was assigned to Third District Judge David S. Young. Once again, Callister filed a motion to dismiss and/or for summary judgment, this time contending that Andersen's Ford, Inc. was the law firm's client, and thus, the real party in interest. Moreover, Callister argued that if Andersen's Ford, Inc. were found to be the real party in interest, then the case must be dismissed based on the res judicata effect of Judge Lewis' ruling. Judge Young dismissed the case with prejudice on May 5, 1994.

## ISSUES ON APPEAL

Holman and Andersen's Ford, Inc. raise the following issues on appeal:

(1) Did the trial court err in ruling that a dissolved corporation is statutorily barred from pursuing a tort claim after its dissolution?

(2) Did the trial court err in concluding that Holman was not a proper party plaintiff in the malpractice action against the law firm that represented Andersen's Ford, Inc. dur-

ing the bankruptcy reorganization proceedings?

## STANDARD OF REVIEW

Because the trial courts received and considered factual allegations outside the pleadings, the motions to dismiss and/or for summary judgment are properly considered motions for summary judgment. *Thayne v. Beneficial Utah, Inc.*, 874 P.2d 120, 124 (Utah 1994). Therefore, in our review, we consider the evidence and all inferences in a light most favorable to the losing party and will sustain the grant of summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991).

## ANALYSIS

### I. Lawsuits by Dissolved Corporations.

■ Holman asserts that Judge Lewis erred in dismissing the malpractice claim filed by the corporation. Holman argues that if the relevant Utah statutes are construed as barring the corporation's malpractice claim before the cause of action has accrued, the statutes would violate the Utah Constitution, which provides that "no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party." Utah Const. art. I, § 11.

Under Utah law in effect at the time these cases arose, a corporation, its directors, officers or shareholders could pursue legal remedies "for any right or claim existing ... *prior to* such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution." Utah Code Ann. § 16–10–100 (repealed July 1, 1992) (emphasis added). Utah law also allowed a dissolved corporation to continue a limited existence to "wind up" its affairs with respect to property and assets that had not been distributed or otherwise disposed of. Utah Code Ann. § 16–10–101 (repealed July

1, 1992). "[T]o effect such purpose[,] such corporation may sell or otherwise dispose of such property and assets, sue and be sued, contract, and exercise all other incidental and necessary powers."[1] *Id.* In addition, Callister asserts, without dispute from Holman, that section 108(a) of the Bankruptcy Code provides that if nonbankruptcy law fixes the time within which a debtor may commence an action and such time has not expired prior to the filing of the bankruptcy petition, such action may be commenced only before the later of either the end of such period or two years following the filing of the petition. 11 U.S.C.A. § 108(a) (West 1993).

Under the facts of this case, the State of Utah dissolved Andersen's Ford, Inc. on September 30, 1982. The Chapter 11 petition was filed on May 3, 1983, within the two year period provided by Utah law. Andersen's Ford, Inc.'s corporate capacity for some purposes, was arguably extended two years beyond the date of filing the bankruptcy petition, to May 3, 1985. *See* 11 U.S.C.A. § 108(a) (West 1993). The Amended Plan of Reorganization was entered by the Bankruptcy Court on October 4, 1984. The IRS letter incorporating the agreed-upon amount owed to it by Andersen's Ford, Inc. was dated November 2, 1984. The malpractice alleged by Andersen's Ford, Inc. was the failure to include the IRS settlement in the approved plan of reorganization. The corporation did not file suit for the alleged malpractice until 1994, well after the time that its corporate existence, in any form, had ceased.

We conclude that these statutes do not allow a dissolved corporation to pursue claims for malpractice after it has ceased to exist in any manner as a corporate entity. Clearly, Andersen's Ford, Inc. lacked any capacity to bring this suit in 1994, almost ten years after its legal existence had ceased.

■ Nor is there any common law basis for the corporation to pursue the malpractice claim. Under the common law, a corporation ceased to exist at dissolution. *Platz v. Inter-*

---

1. In 1992, the Utah Legislature adopted the Revised Model Business Corporation Act, which states that dissolving a corporation does not "prevent commencement of a proceeding by or against the corporation in its corporate name." Utah Code Ann. § 16–10a–1405(2)(e) (Supp. 1994).

*national Smelting Co.,* 61 Utah 342, 350–51, 213 P. 187, 190 (1922). For that reason, a dissolved corporation was "incapable of maintaining an action; and all such actions pending at the time of dissolution abate, in the absence of a statute to the contrary." *Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.,* 302 U.S. 120, 125, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937).

For the foregoing reasons, we affirm the trial court's order dismissing the malpractice action filed on behalf of the corporation.[2]

## II.  Proper Party.

■ Holman also contends that Judge Young, the trial judge in the second case, erred in ruling Holman was not a proper party plaintiff. The trial court dismissed Holman's complaint after concluding that Andersen's Ford, Inc., not Holman, was the party in interest and, thus, an indispensable party to the lawsuit. Additionally, Judge Young concluded that even if Andersen's Ford, Inc. were joined, the case would still have to be dismissed because of the res judicata effect of Judge Lewis' dismissal of the complaint previously filed on behalf of Andersen's Ford, Inc.

Holman claims that although Andersen's Ford, Inc. was Callister's client, Callister had an implied attorney/client relationship with him personally. Holman argues that Callister knew he was continuing to operate the business, despite the corporate dissolution, and nevertheless advised him to file the Chapter 11 bankruptcy petition to halt the IRS's attempts to collect taxes for which both he and the corporation were liable. Holman relies primarily on the Utah Supreme Court case of *Margulies by Margulies v. Upchurch,* 696 P.2d 1195 (Utah 1985). In *Margulies,* the court found a conflict of interest existed because an attorney-client relationship could be implied when attorneys representing a physicians' limited partnership also undertook to represent a patient in a lawsuit against one of the partner physicians. *Id.* at 1200. The court held that

"[e]ven in the absence of an express attorney-client relationship, circumstances may give rise to an implied professional relationship or a fiduciary duty toward the client, thereby invoking the ethical mandates governing the practice of law." *Id.*

Callister argues that Holman's claim of an implied attorney-client relationship should not be considered because it is a new argument raised for the first time on appeal. Callister cites *Ong International (U.S.A.) Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 455 n. 31 (Utah 1993), in which the Utah Supreme Court stated that the trial court must address an argument before it may be considered on appeal. An argument will be deemed to have been raised before the trial court if the trial court had an opportunity to enter findings of fact and/or conclusions of law. *James v. Preston,* 746 P.2d 799, 801 (Utah App.1987). The argument must be reasonably discernible from the pleadings, affidavits and exhibits. *Id.* Moreover, even when an appellate court liberally construes the record in favor of a party, as it must on review of a summary judgment, there must be a "factual showing or ... submission of legal authority" before the argument will be deemed to have been raised at the trial court level. *Id.*

We therefore look to the record before the trial court, to determine whether there were disputed issues of material fact or legal argument presented on the issue of a possible implied attorney-client relationship. In doing so, we resolve all doubts in favor of Holman and allow for all reasonable inferences.

The pertinent record before us consists of the pleadings, Holman's memorandum in opposition to the motion to dismiss, and his affidavit supporting that memorandum. It is clear from this record that Holman did not explicitly raise the issue before the trial court. He did not cite any case law relevant to an implied attorney-client relationship and did not allege that Callister undertook to advise him in a personal capacity or even

---

**2.** We have considered Holman's argument that the trial court's interpretation of the relevant statutes violated the Utah Constitution and find it to be without merit. *State v. Carter,* 776 P.2d

886, 888 (Utah 1989) (stating appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised").

discussed with him any potential personal liability. In addition, the record does not include any factual assertions which might indicate an implied attorney-client relationship. The relevant portion of Holman's affidavit read as follows:

> 2. At all times after January 1, 1982, Plaintiff held all of the shares of stock of "Andersen's Ford, Inc.', with the exception of the extremely minor holdings of two shares of stock held by his immediate family.
>
> 3. For many years prior to January 1, 1982, defendant had acted as counsel to "Andersen's Ford, Inc." on virtually all matters regarding its business affairs, and had secured approval directly from plaintiff as to legal actions to be taken regarding the corporation.
>
> 4. At all times after January 1, 1982, Plaintiff was the sole "director" or "officer" directing the actions and activities of the "corporation" and was known to defendant to be the sole person controlling the actions and operations of "Andersen's Ford, Inc."
>
> 5. At all times during the relationship with defendant, plaintiff relied upon the advice and counsel of defendant on such matters.

None of these facts demonstrate the requisite factual showing with regard to the existence of an implied attorney-client relationship. All of the references are limited solely to the relationship between Andersen's Ford, Inc. and Callister, not to the relationship with Holman individually.

Having examined the record on appeal, we do not believe Holman raised the issue of an implied lawyer-client relationship before the trial court in a sufficient manner to allow the court to analyze and decide the issue. Moreover, Holman did not assert facts which, if believed and construed in his favor, would establish an implied attorney-client relationship. We therefore conclude that the trial court did not err in granting Callister's motion to dismiss.

## CONCLUSION

The malpractice action filed on behalf of Andersen's Ford, Inc. was properly dismissed. The State of Utah had dissolved the corporation and all possible extension periods had expired prior to the time this action was filed. Lacking a legal existence, the corporation could not assert a cause of action.

We also conclude the trial court did not err in dismissing Holman's action against Callister. Holman failed to raise the issue of a possible implied attorney/client relationship before the trial court by not alleging facts or presenting legal arguments which would preserve such claim.

Affirmed.

WILKINS, J., concurs.

ORME, P.J., concurs except as to Section I, in Which he concurs in result only.