**Paul HOUGHTON, Billie Henderson individually and each as representative of a class, Damian Henderson, Wayne Rubens, Ron Roes and Susan Roes, members of these classes, similarly situated, Plaintiffs and Appellants,**

**v.**

**DEPARTMENT OF HEALTH, the Office of Recovery Services, the Department of Human Services and the State of Utah, (the "State defendants") and Rod L. Betit, Director of the Department of Health and Director of the Department of Human Services, Emma Chacone, Executive Director of the Office of Recovery Services, John Does 1–50, and Jane Does 1–50, Defendants and Appellees.**

No. 960349.

Supreme Court of Utah.

July 14, 1998.

Jan Graham, Atty. Gen., Norman E. Plate, Asst. Atty. Gen., Salt Lake City, for defendants.

Robert B. Sykes, James D. Vilos, Salt Lake City, for Plaintiffs.

STEWART, Justice.

The plaintiffs appeal the trial court's order disqualifying their attorneys, Robert B. Sykes, James D. Vilos, and Matthew H. Raty, and the law firm of Sykes and Vilos, P.C. (hereinafter collectively referred to as "Sykes and Vilos"), on the ground that they had a conflict of interest. The complaint challenged the State's authority to impose Medicaid liens on damages for personal injuries that Medicaid recipients recovered in lawsuits they brought against third parties. The trial court held that Sykes and Vilos had a conflict of interest under Rule 1.9 of the Utah Rules of Professional Conduct by their representation of the plaintiffs against the State. The court ruled Sykes and Vilos had a conflict of interest because they had previously represented the defendant, the State, in prior personal injury actions brought by Medicaid recipients against third persons, in which Sykes and Vilos agreed to preserve the State's statutory Medicaid reimbursement liens against recoveries obtained on behalf of the Medicaid recipients.

## I. THE TRIAL COURT'S DISQUALIFICATION OF SYKES AND VILOS AND THE PLAINTIFFS' APPEAL

The plaintiffs are recipients of Medicaid assistance. Their complaint against the State (and various state agencies and officials) challenges the legality of liens imposed by Utah Code Ann. § 26–19–5 (1997), on funds they obtained in prior personal injury actions against third persons. The plaintiffs alleged only one claim, that § 26–19–5, on its face, violates federal Medicaid law. The complaint raises no issue of fact, and it does not attack any particular Medicaid reimbursement lien as applied in a particular case.

Prior to undertaking the representation of the plaintiffs in this case, Sykes and Vilos represented a number of Medicaid recipients in tort actions against third parties for personal injuries suffered by those recipients. In those lawsuits, Sykes and Vilos complied

with Utah Code Ann. § 26–19–7(1)(a), which states that "[a] recipient may not file a claim, commence an action, or settle, compromise, release, or waive a claim against a third party for recovery of medical costs for an injury, disease, or disability for which the department has provided or has become obligated to provide medical assistance without the department's written consent."

Pursuant to this provision, Sykes and Vilos were required to enter into written agreements with the State's Office of Recovery Services ("ORS") to protect the State's interest in obtaining reimbursement from damages awarded against third party defendants and in favor of a plaintiff who had received medicaid payments. Utah Code Ann. § 26–19–7(3) (1997) states: "The department's written consent ... shall state under what terms the interests of the department may be represented in an action commenced by the recipient." Those agreements, in pertinent part, provided:

> ORS ... is charged with enforcing the statutory priority lien granted pursuant to Utah Code Ann. § 26–19–5. Attorney is representing the recipient in the incident described above to recover damages of the recipient and is desirous of representing ORS in its claim for recovery of medical expenses in the same incident.

> Wherefore, in consideration of the mutual promises of the parties it is agreed that:

> 1. Attorney and Recipient acknowledge the State's Medicaid lien and its direct right of recovery against any liable third party for the total medical expenses paid or to be paid on behalf of the Recipient, as defined in the Utah Code Ann. § 26–19–5(1)

> . . . .

> 5. Attorney agrees to zealously represent the interests of the State, acknowledge an attorney/client relationship with ORS, and agrees to keep ORS informed of the progress of the case. . . .

> . . . .

> 9. ORS will assist Attorney with medical information reports in its files and will at all times cooperate in the best mutual interest of Recipient and ORS.

Notwithstanding the language implying a voluntary contractual relationship between Sykes and Vilos and ORS, Sykes and Vilos were legally obligated under § 26–19–7(3) to sign the agreements if they wished to represent Medicaid recipients in actions against third parties.

After the plaintiffs commenced this lawsuit, the State moved for the disqualification of Sykes and Vilos on the ground that Sykes and Vilos's representation of plaintiffs against the State resulted in a conflict of interest prohibited by Utah R. Prof. Conduct 1.9. The State asserted that Sykes and Vilos's representation of the plaintiffs was adverse to the State, which the firm had formerly represented in the "same or [ ] substantially factually related matter[s]." *Id.*

The State concedes that the degree of consultation between the State and Sykes and Vilos in the prior cases was limited to discussions of the amounts of the Medicaid liens that the State asserted and the conditions under which the State would be willing to waive or reduce its lien if a recovery were obtained. The State did not give Sykes and Vilos any litigation related documents except copies of the medical records of their injured clients.

The trial court ruled that "[t]he present representation of Plaintiffs' counsel presents a conflict arising from the former representation of the interests of the Office of Recovery Services, State of Utah in the same or a substantially factually-related matter." The court stated that "[i]t would be entirely inappropriate for Plaintiffs' counsel to sue their former clients [i.e., the State], challenging the underlying statute that they so willingly, either by implication or otherwise, believed to be a valid statute a few short months ago." Thus, the trial court disqualified Sykes and Vilos on the ground that the Rules of Professional Conduct precluded Sykes and Vilos from attacking a statute that gave rise to the agreements they had signed as a condition of representing Medicaid recipients.

The plaintiffs petitioned for interlocutory appeal, and we granted the petition. The plaintiffs argue that (1) the trial court erred in ruling that Sykes and Vilos's current representation is "substantially factually relat-

ed" to their prior agreement to represent the State; (2) the State had no expectation of confidentiality in any information it conveyed to Sykes and Vilos; (3) the State waived any right to object to Sykes and Vilos's representation of the class action plaintiffs; and (4) the district court abused its discretion by failing to weigh the beneficial and harmful effects of disqualification.

## II. RULE 1.9 OF THE RULES OF PROFESSIONAL CONDUCT

### A. *Standard of Review*

■ "Trial courts are usually given broad discretion in controlling the conduct of attorneys in matters before the court; their discretion extends to deciding whether disqualification is a proper sanction after a finding of an ethical violation." *Margulies v. Upchurch*, 696 P.2d 1195, 1199 (Utah 1985) (citations omitted). In *Margulies* we held that the proper standard of review for decisions relating to disqualification is abuse of discretion. *Id.* at 1200. We also acknowledged, however, that "[s]ome appellate courts ... have undertaken review without deference to the trial court on the ground that the interpretation of the ethical rules governing the legal profession involves substantial legal questions." *Id.* at 1199. In light of our holding in *State v. Pena*, 869 P.2d 932, 936–38 (Utah 1994), we now hold that, to the extent this Court has a special interest in administering the law governing attorney ethical rules, a trial court's discretion is limited.

■ As also noted in *Pena*, the background of each case may impact the degree of discretion accorded to the trial court. Where courts are called upon to resolve numerous factual disputes, and the quantity of less-tangible factors implicating the trial court's decision is large, a trial court is naturally in a better position to consider and weigh all those circumstances in their application to the legal standard at issue. *Id.* at 935–36. In the instant case, there were virtually no disputed issues of historical fact presented to the trial court. The facts and circumstances of Sykes and Vilos's earlier representation of the State's lien interest

were uncomplicated and, as a matter of historical fact, dispute free. The sole issue before the trial court was the legal and ethical significance of the agreement between the State and Sykes and Vilos. The only possible factual dispute was whether the State had disclosed confidential information that Sykes and Vilos might arguably have used to the State's detriment. The trial court did not find that any such confidences had been disclosed. For these reasons, we accord little deference to the trial court in its decision in this case.

### B. *Suing a Prior Client*

■ Utah R. Prof. Conduct 1.9 provides in pertinent part:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially factually related matter in which that person's interests are materially adverse to the interests of the former client ...; or

(b) Use information relating to the representation to the disadvantage of the former client except ... when the information has become generally known.

Rule 1.9 provides for disqualification of an attorney who sues a former client in two instances. First, Rule 1.9(a) states that an attorney may not represent a client against a former client in matters that are "substantially factually related." Second, Rule 1.9(b) provides that an attorney may not use information relating to the representation of a former client to the disadvantage of that client. In both instances, there must have been an attorney-client relationship upon which the prior representation was based.

"The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself." Utah R. Prof. Conduct, Preamble on Scope of Rules. Rule 1.9 was intended to prevent the betrayal of a professional trust arising out of the lawyer-client relationship. Discussing the ethical canons predating our current Rule 1.9, *Margulies* stated that the rules relating to subsequent adverse representation were:

intended to prevent the possibility that an attorney might use information given in confidence by a former client in a later action against that client. Allowing later adverse representation when the former client's disclosures might be used against him could inhibit the free exchange of information between attorney and client which our legal system presupposes.

*Margulies,* 696 P.2d at 1202.

The official commentary to the ABA rules states that Rule 1.9 is specifically concerned with the lawyer's acquisition of confidential information. "The test presumes that the lawyer acquired confidential information from the former client if the subject matter of the current representation (of a client whose interests are adverse to those of the former client) is the same as or substantially related to the subject matter of the former representation." ABA Lawyer's Manual on Prof. Conduct 51:201 (1997).

Even assuming that a confidential relationship existed between the State and Sykes and Vilos in the prior personal injury actions, Sykes and Vilos have not violated Rule 1.9(a) or (b). The prior cases and the present litigation are not "substantially factually related," and there were no confidences that they might have acquired in those cases that could be used to the State's detriment in the instant case.

Utah's Rule 1.9(a) is based on Rule 1.9(a) of the ABA Model Rules, but the Utah version and the ABA version differ in one important respect. The ABA Model Rule speaks of barring representation in "the same or a substantially related matter," but the Utah Rule more specifically refers to "a substantially *factually* related matter." (Emphasis added.) Utah's provision is unique in this regard.[1] That difference is explained in the official Comment to Utah R. Prof. Conduct 1.9:

The scope of a "matter" for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. *On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.*

(Emphasis added.)

In construing Utah's Rule 1.9(a), the federal courts and the Utah Court of Appeals have referred to the necessity for a distinct, factual link between the former and present representations. In *SLC Ltd. v. Bradford Group West, Inc.,* 999 F.2d 464, 467 (10th Cir.1993), the United States Court of Appeals for the Tenth Circuit stated that Utah's requirement "focus[es] on the factual nexus between the prior and current representations rather than a narrower identity of legal issues." Similarly, the court in *Poly Software Int'l, Inc. v. Yu Su,* 880 F.Supp. 1487 (D.Utah 1995), referred to "substantial factual threads connecting the two matters." *See also State v. Larsen,* 828 P.2d 487, 491–92 (Utah Ct.App.1992) (generally discussing the requirement of substantial factual relation).

Although one of Sykes and Vilos's present clients was previously represented by Sykes and Vilos in an action in which the firm signed a representation agreement with the State, there is no common *factual* nexus between the prior cases and the present action. The present case exclusively presents a strict legal question. The issue simply is the legality of the challenged Utah statute. The adjudication of that issue does not involve any factual information arising out of Sykes and Vilos's prior representations, other than the public information that a Medicaid recipient had sued third party tortfeasors and had paid a sum recovered in those actions to the State. Because the particular facts involved in the prior representations are not in issue here nor are they in any way even relevant in the present lawsuit, Sykes and Vilos could not use any information in the instant action against the State that the

---

**1.** An ABA survey reveals that Utah is the only state that employs this particular language [ABA Manual 51:204–05].

State might have conveyed to Sykes and Vilos in the prior cases. While it is true that the instant case superficially resembles Sykes and Vilos's former cases in the sense that both sets of cases relate to the State's right to Medicaid reimbursement from third parties, that does not implicate the concerns of Rule 1.9. Sykes and Vilos did not violate Rule 1.9(a) by agreeing to represent the plaintiffs in the present litigation against the State.

Nor has the State asserted any plausible argument under Rule 1.9(b) that it has been placed at a disadvantage in defending the legal challenge to the statute by attorneys who previously signed the State's representation agreements. The State concedes that the litigation of the present case involves no confidential information from the prior third-party actions. The most that the State has asserted is that Sykes and Vilos were privy to the State's "strategy" in pursuing Medicaid reimbursement. But the State's strategy in the prior cases has nothing to do with the class-action plaintiffs' current attack on Utah Code Ann. § 26–19–5, which is a purely legal argument. The State has been unable to articulate, even hypothetically, how knowledge of this alleged "strategy" gives any unfair advantage to Sykes and Vilos's plaintiffs in this case.

Furthermore, Rule 1.9 does not apply at all unless Sykes and Vilos entered into an actual attorney-client relationship with the State in agreeing to collect the money the State claimed for reimbursement. Notwithstanding the language in the State's representation agreements, Sykes and Vilos's representation of the State's interests was merely pro forma. Essentially the firm acted as a collections agent for the State.

We therefore reverse the trial court's order of disqualification and remand this case with a directive to reinstate Sykes and Vilos as attorneys for the class action plaintiffs.

HOWE, C.J., DURHAM, Associate C.J., and ZIMMERMAN and RUSSON, JJ., concur in Justice STEWART'S opinion.