**2018 UT App 64**

# THE UTAH COURT OF APPEALS

CHELSIE GWEN NEWTON, JERRICKO ROBERT NEWTON, RONALD
PRESTON ISAACSON, AND SUZIE GWEN NEWTON,
Appellants,
*v.*
STONERIDGE APARTMENTS, CHRIS EDWARD WALL, TARA COHAN
WALL, WALL BROTHERS REAL ESTATE LIMITED PARTNERSHIP, AND
WALL BROTHERS INC.,
Appellees.

Opinion
No. 20150957-CA
Filed April 12, 2018

Fourth District Court, Spanish Fork Department
The Honorable M. James Brady
No. 120300155

D. David Lambert, Leslie W. Slaugh, and Andrew B.
Berry Jr., Attorneys for Appellants

Daniel S. McConkie and Ryan Beckstrom, Attorneys
for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE GREGORY K. ORME concurred. JUDGE MICHELE M.
CHRISTIANSEN concurred in the result.

MORTENSEN, Judge:

¶1     The district court disqualified a law firm from
representing the appellants in this case, finding that a substantial
relationship existed between this and an earlier case. Prior to the
law firm's participation and removal in the present case, it
represented, in the earlier case, Tyler Lloyd Peterson—a key
witness in this case. Because that finding was erroneous, we

vacate the district court's order and remand this case for further proceedings.

BACKGROUND

¶2    Peterson was a tenant of Stoneridge Apartments.[1] In exchange for reduced rent, Peterson performed various managerial duties such as collecting rent, handing out furnace filters, and cleaning the exterior of the building. In 2011, Peterson pled guilty to sexually assaulting[2] a member of the Newton family;[3] the Newtons were tenants of Stoneridge at the time. In 2012, the Newtons filed the present action against Peterson and Stoneridge as a result of the assault, alleging that Stoneridge should be held liable for the intentional tortious actions of Peterson.

¶3    While originally represented by a different attorney, the Newtons eventually retained D. David Lambert (Lambert) of the law firm Howard, Lewis & Petersen PC (the Firm), who entered his appearance as counsel for the Newtons in September 2014. Another attorney at the Firm (Attorney) had previously represented Peterson in a 2002 custody and support case. Roughly two and a half months after Lambert appeared in the case, Peterson moved to disqualify Lambert and the Firm due to Attorney's previous representation.

---

1. Stoneridge Apartments is an appellee in this case, as are the owners of Stoneridge Apartments and their related business entities. We refer to the appellees collectively as Stoneridge.

2. Peterson pled guilty in the resulting criminal case against him.

3. All of the appellants are members of the Newton family. We refer to them collectively as the Newtons.

¶4      Attorney filed a declaration stating that he had not received any information about Peterson in the 2002 case that could possibly be of use in the instant case. Lambert also filed a declaration, stating that he had not received any information from Attorney or from any files held by the Firm regarding the 2002 case that was relevant to the instant case. Both attorneys stated that screening measures had been implemented to ensure that Lambert would not learn any confidential information Attorney might have received. Nevertheless, the district court granted Peterson's motion to disqualify both the Firm and Lambert. The district court explained that the Firm had "acquired personal, private information regarding [Peterson] which is protected by Rules 1.6 and 1.9(c) [of the Utah Rules of Professional Conduct], [and] which is material to the present case." The court also noted that the Firm "has not demonstrated that [Peterson] waived the disqualification of [the Firm] in this case."

¶5      Shortly after the disqualification of the Firm, the Newtons stipulated to the dismissal of Peterson from the case with prejudice. And four months after his dismissal, the Newtons filed a motion "to determine issues regarding disqualification now that . . . Peterson has been dismissed with prejudice."[4] They argued that Stoneridge had not moved for disqualification and lacked standing to do so, and that the disqualification only prevented the Firm from representing a party opposed to Peterson. Consequently, the Newtons asked the district court to partially vacate the order of disqualification.

---

4. The Newtons brought this motion citing only rule 7 of the Utah Rules of Civil Procedure. That rule sets forth the general process and requirements for making motions. *See* Utah R. Civ. P. 7(b). For ease of reference and for purposes of our analysis, we refer to the Newtons' motion as the Motion to Determine. *See infra* Part III.

¶6    The district court declined to vacate its previous order. It noted that the advisory ethics opinion on which the Newtons had relied concluded "that the cross-examination of a former client by an attorney does not create a per se disqualifying conflict of interest, but advises that the evaluation of the conflict must go further to include the specific facts and circumstances of the case." The district court then explained that the order of disqualification had not been "conditional, provisional, or limited to whether or not . . . Peterson is a party in the present action . . . [the interests of the Newtons] are adverse to . . . Peterson's interests even though he is not a party in the present case."

¶7    The Newtons timely requested leave to take an interlocutory appeal from the district court's decision not to vacate its order of disqualification. We granted the request.

ISSUES AND STANDARD OF REVIEW

¶8    The Newtons first contend that Stoneridge had no standing to bring a motion to disqualify Lambert or the Firm. The Newtons next contend that the district court erred in determining that the 2002 custody and support case was substantially related to the instant case. The Newtons also contend that the district court failed to properly reconsider its determination that disqualification was required after Peterson was dismissed from the case. Finally, the Newtons contend that the district court abused its discretion by failing to "weigh the beneficial and harmful effects of disqualification." "The proper standard of review for decisions relating to disqualification is abuse of discretion. However, to the extent [an appellate court] has a special interest in administering the law governing attorney ethical rules, a trial court's discretion is limited." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 18, 299 P.3d 1058 (cleaned up).

ANALYSIS

¶9     We disagree with the Newtons that traditional standing requirements demand reversal of the district court's order. But we agree that the district court improperly applied our disqualification rules to the case at hand.

I. Standing

¶10     The Newtons first contend that the district court abused its discretion by "disqualifying [the Newtons'] counsel for the benefit of a party that had never moved for disqualification and which had never been a prior client of the firm." They argue that Stoneridge did not have standing to file such a motion, pursuant to Rule 1.9 of the Utah Rules of Professional Conduct, which provides that a duty to a former client is owed when there is an attorney-client relationship upon which the prior representation was based. Here, the Newtons allege that Stoneridge lacked standing because the only attorney-client relationship that was formed between Lambert or the Firm was with Peterson—not Stoneridge.

¶11     In typical motion practice, a party can only oppose a motion if that party has a dog in the fight. *See e.g.*, *Packer v. National Service Indus., Inc.*, 909 P.2d 1277, 1278 (Utah Ct. App. 1996) (determining that a codefendant in a multiparty litigation could not oppose a summary judgment motion between other parties where no cross-claim had been brought). This principle does not pertain to issues of disqualification because such determinations do not flow from the pleadings or the parties but instead find their genesis in the inherent power of the court to regulate the practice of law. *See Featherstone v. Schaerrer*, 2001 UT 86, ¶ 17, 34 P.3d 194 (stating that the trial court's decision to employ its inherent power to control the conduct of attorneys "operates independently of how the court learns of a potential ethical or other violation"). But rule 1.9 simply states that a

lawyer shall not represent certain clients or do certain things in specified circumstances. *See* Utah R. Prof'l Conduct 1.9.

¶12   There is no indication in the language of rule 1.9 that standing is required to file a motion to disqualify; even though the rule 1.9 issues were brought to the district court's attention by motion, the district court took on the task of enforcement itself, which is proper. Trial courts wield the power to correct violations on their own initiative or in response to a motion from a party. *See Featherstone*, 2001 UT 86, ¶ 17, 34 P.3d 194. Because the issue presented is one of potential disqualification, we agree that Stoneridge could properly assist the trial court in employing its inherent power regardless of whether Stoneridge's interests were implicated.

## II. Disqualification

¶13   While we disagree with the Newtons' contentions regarding Stoneridge's lack of standing, we agree that the district court erred in ultimately concluding that the Firm should be disqualified. To begin, we clarify that the district court made its order under subsection (b) of rule 1.9 of the Utah Rules of Professional Conduct, which discusses duties to former clients. Then, reaching the merits of the Newtons' challenges, we conclude that the district court abused its discretion by erroneously finding that a substantial relationship existed between this and the earlier case. That revelation requires reversal of the district court's order.

A.     The District Court's Order Applying Rule 1.9

¶14   We begin by discussing the district court's framework for our analysis. In its brief, Stoneridge repeatedly refers to subsections (a) and (c) of rule 1.9 to argue that the district court's disqualification order should stand. Of particular note is Stoneridge's conclusion that despite Peterson's dismissal from the case, under subsection (c), "Lambert is still forbidden from

us[ing] information relating to the representation [of Peterson] to the disadvantage of [Peterson], or, more broadly, from even representing a client—such as [the Newtons]—whose interests are materially adverse to his former client's interests." (Quoting Utah R. Prof'l Conduct 1.9(c)(1).) But the district court actually disqualified the Firm and Lambert under subsection (b).

¶15     Subsection (b) of rule 1.9 mandates:

> (b)     A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> (b)(1) whose interests are materially adverse to that person; and
>
> (b)(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

Utah R. Prof'l Conduct 1.9(b). The district court ordered the disqualification of the Firm for four reasons, which track the language of subsection (b) almost exactly:

> 1.     A member of [the Firm] has formerly represented [Peterson] in a substantially related matter.
>
> 2.     The interests of [the Firm's] current client are materially adverse to the interests of [Peterson].
>
> 3.     [The Firm] acquired personal, private information regarding [Peterson] which is protected by Rules 1.6 and 1.9(c), an[d] which is material to the present case.

> 4. [The Firm] has not demonstrated that [Peterson] waived the disqualification of [the Firm] in this case.

¶16 Subsection (b)'s mere reference to subsection (c) cannot convert the district court's disqualification under subsection (b) to a disqualification under subsection (c). Thus, we are tasked with determining whether the district court properly ordered disqualification under subsection (b). It did not.

B. The District Court's Substantial-Relationship Finding

¶17 In its order, the district court determined that the Firm had "formerly represented [Peterson] in a substantially related matter." This determination is a factual finding.[5] *See Roderick v. Ricks*, 2002 UT 84, ¶¶ 52–55, 54 P.3d 1119 (upholding the district court's findings that the earlier instances of an attorney's representation were "not substantially factually related to the matter involving" the present case on appeal). We typically expect challenges to factual findings to include marshaling of the evidence supporting the findings, though this is no longer a "hard-and-fast" requirement. *See State v. Nielsen*, 2014 UT 10, ¶¶ 40–41, 326 P.3d 645. But even when marshaling was a

---

5. The Newtons seem to believe—and Stoneridge does not take issue with the belief—that the determination of substantial relationship is a conclusion of law that should be reviewed for an abuse of discretion. However, in *Roderick v. Ricks*, 2002 UT 84, 54 P.3d 1119, the Utah Supreme Court, in deciding a challenge to a rule 1.9(a) disqualification, referred to a substantial-relationship determination as a "factual finding," which it reviewed for clear error. *See id.* ¶¶ 53, 55. We therefore read the Newtons' challenge on this point as a challenge to the district court's factual findings, the merits of which are reviewed for clear error.

requirement for a successful challenge to a finding of fact, there was an understood exception: "If there simply is no supportive evidence, counsel need only say so and the challenge will be well-taken—counsel is not expected to marshal the nonexistent." *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733.

¶18   This is essentially what we have in this case. In challenging the district court's substantial-relationship finding, the Newtons assert, "There is no factual overlap between the custody case and the current tort case." And given the district court's failure to provide any support for its finding, the Newtons' challenge is well taken for two reasons. *See Woodward v. Fazzio*, 823 P.2d 474, 477 (Utah Ct. App. 1991) (explaining that a "marshaling effort was largely ineffectual by reason of the conclusory nature of the trial court's findings of fact"); *id.* at 478 (concluding that affirmance was "impossible" in large part because the trial court's findings provided "an inadequate account of the actual *facts* supporting the court's ultimate decision"; most of the findings were "conclusory, and reflect an intention to merge the trial court's ultimate factual determinations with the requirements of the [relevant legal test]").

¶19   First, the district court provided no explanation for its ultimate finding that the two matters are substantially related. It merely stated the conclusory fact that they are. But a review of the record before us—which was also before the district court— shows that there is insufficient evidentiary support for a finding of substantial relationship. The record provides little information regarding any possible factual link between the two cases. Instead, the district court seems to have rested its finding on the sole fact that Peterson was involved in both the prior and the current case. But the mere existence of a common party or player is not enough for disqualification under rule 1.9 of the Utah Rules of Professional Conduct; if it were, the rule would be much shorter and would make no mention of substantially

related matters, materially adverse interests, or acquisition of protected information.

¶20    Here, we know only that in 2002, the Firm represented Peterson in a domestic matter. The case involved custody and support issues, and the matter was resolved by agreement of the parties in May of that year. The present case, for which the Firm entered an appearance in 2014, rests on allegations that Peterson committed a sexual assault in August 2011, more than nine years after the domestic matter concluded, against a victim wholly unrelated to the prior matter. As our supreme court concluded in *Cheves v. Williams*, 1999 UT 86, 993 P.2d 191, such "general statements concerning the prior representation [are] insufficient to support [an attorney's] disqualification."[6] *Id.* ¶ 60. We see nothing more than general statements in the record. Therefore, the district court's finding of a substantial relationship, along with its disqualification of the Firm—without more—is unsupported.

¶21    Second, given the facts available in the record, there appears to be no factual nexus—much less a substantial one—between the Newtons' claims and the earlier representation. *See Houghton v. Department of Health*, 962 P.2d 58, 62–63 (Utah 1998), *overruled on other grounds by Arkansas Dep't of Health & Human Services v. Ahlborn*, 547 U.S. 268 (2006).[7]

---

6. Further, our supreme court has also recognized that the misuse of "disqualification motions based on very slight appearances of impropriety" for "tactical advantage in litigation" will not be tolerated. *Margulies ex rel. Margulies v. Upchurch*, 696 P.2d 1195, 1204 (Utah 1985).

7. *Houghton* interpreted an earlier version of rule 1.9. *See Houghton v. Department of Health*, 962 P.2d 58, 61 (Utah 1998), *overruled on other grounds by Arkansas Dep't of Health & Human*

(continued…)

¶22    In *Houghton*, our supreme court explained:

In construing Utah's Rule 1.9(a),[8] the federal courts
and the Utah Court of Appeals have referred to the

---

(…continued)
*Services v. Ahlborn*, 547 U.S. 268 (2006). That version of the rule—
interpreted not only by *Houghton* but also at issue in much of our
other rule 1.9 jurisprudence—disqualified attorneys when
matters were "substantially factually related." *See* Utah R. Prof'l
Conduct 1.9(a) (2005). In 2005, the Supreme Court amended rule
1.9 and removed the word "factually." *Compare id.* (Supp. 2005),
*with id.* R. 1.9(b) (2017). Since that time, neither this court nor our
supreme court has had occasion to consider in any detail what
effect the amendment should have on our analysis. However, we
believe the amendment makes little difference here. Comment 2
to the current rule explains, "The scope of a 'matter' for purposes
of this Rule depends on the *facts* of a particular situation or
transaction." *Id.* R. 1.9 cmt. 2 (2017) (emphasis added). Likewise,
comment 3 addresses when matters are substantially related and
suggests, in part, that "knowledge of specific *facts* gained in a
prior representation that are relevant to the matter in question"
likely precludes subsequent representation. *Id.* R. 1.9 cmt. 3
(emphasis added). Furthermore, federal cases interpreting the
current version of our rule have continued to "evaluate
'substantiality by focusing on the *factual* nexus between the prior
and current representation rather than a narrower identity of
legal issues.'" *Becker v. Ute Indian Tribe of the Uintah & Ouray
Reservation*, No. 2:13-CV-00123, 2013 WL 4046315, at *2 (D. Utah
Aug. 7, 2013) (emphasis added) (quoting *SLC Ltd. V v. Bradford
Group West, Inc.*, 999 F.2d 464, 467 (10th Cir. 1993)). Thus, we rely
on *Houghton* in conducting the present inquiry.

8. *Houghton* references subsections (a) and (b) of the earlier
version of rule 1.9. *See* 962 P.2d at 61. In that earlier version,

(continued…)

necessity for a distinct, factual link between the former and present representations. In *SLC Ltd. V v. Bradford Group West, Inc.*, 999 F.2d 464, 467 (10th Cir. 1993), the United States Court of Appeals for the Tenth Circuit stated that Utah's requirement "focus[es] on the factual nexus between the prior and current representations rather than a narrower identity of legal issues."

*Houghton*, 962 P.2d at 62. The court went on to explain that in the case before it, there was "no common factual nexus." *Id. (*emphasis omitted).

¶23    Like the court in *Houghton*, we conclude that "[t]he adjudication of" the claims against Stoneridge "[do] not involve any factual information arising out of [the Firm's] prior representation[]." *See id.* "Because the particular facts involved in the prior representation[] are not in issue here nor are they in any way even relevant in the present lawsuit," there is no support for a finding that the two cases are substantially related. *See id.* at 62–63; *see also Joint Sugar House, LLC v. I4 Solutions*, No. 2:16-cv-00151, 2016 WL 2344220, at *3 (D. Utah May 3, 2016) (finding no substantial relationship between a prior representation in which attorneys helped draft portions of a

---

(…continued)
subsection (b) mandated that attorneys not "[u]se information relating to the representation to the disadvantage of the former client except . . . when the information has become generally known." *See id.* (quoting Utah R. Prof'l Conduct 1.9(a) (1998)). Thus, what was once subsection (b) matches the current language of subsection (c)(1). *See* Utah R. Prof'l Conduct 1.9(c)(1) (2017). And what is now subsection (b) was included in what the *Houghton* court cites as subsection (a). *Compare id.* R. 1.9(a) (1998), *with id.* R. 1.9(b) (2017).

contract and a subsequent representation where that same contract was at issue but the claims asserted dealt with copyright infringement, not breach of the contract).

¶24    In other words, we agree with the Newtons that "even if it were assumed that in the 2002 custody case [the Firm] had to deal with . . . Peterson's character, misconduct, abusive behavior, or criminal history," there is no distinct factual link between that representation and the present case, which turns on what Stoneridge knew or should have known when it entrusted Peterson with access to the Newtons' apartment. "Although there may be some factual overlap between the prior and current representation, it is not the type of overlap that can be regarded as changing sides in the matter or as creating a risk that confidential factual information would materially advance any party's position in this current litigation." *See Ironshore Specialty Ins. v. Callister Nebeker & McCullough*, No. 2:15-cv-677-RJS-BCW, 2016 WL 2858800, at *2 (D. Utah May 16, 2016). Ultimately, this case is not about Peterson's domestic past; it is about his criminal behavior a decade later. We therefore conclude that the district court clearly erred when it found the two matters were substantially related.[9]

### III. Motion to Determine

¶25    We also conclude that the district court erred when it refused to alter its ruling—which rested on the existence of an attorney-client relationship—after the client was removed from the picture. It declined to amend that ruling because "[n]othing in the court's order of disqualification indicated it was

---

9. We are not blind to the fact that information Peterson may have provided Attorney might still be off limits at trial under rule 1.9(c), but that was not the basis for the district court's ruling.

conditional, provisional, or limited to whether or not . . . Peterson is a party in the present action." We acknowledge that the original disqualification order contained no such condition, provision, or limitation; however, when exercising its discretion in deciding the motion, the district court could not rely upon a faulty legal premise. *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (stating that an abuse of discretion may be demonstrated by showing a district court relied on an erroneous conclusion). And in this case, it was erroneous to conclude that the absence of Peterson as a party was immaterial. Peterson's party or non-party status is critical to a proper application of rule 1.9(b).

¶26 Again, rule 1.9(b) requires disqualification only if Peterson's interests are "materially adverse to" the Newtons' interests. *See* Utah R. Prof'l Conduct 1.9(b)(1). Part of the Newtons' appeal rests on the following assertion: "If, as the trial court has ruled, there were grounds to disqualify [Lambert] when [Peterson] was a party to this case, those grounds no longer applied to disqualify [Lambert] once [Peterson] was no longer a party and had been dismissed with prejudice." We agree.

¶27 Subsection (b)(1) speaks in the present tense, considering whether a former client's "interests *are* materially adverse to" a current client's interests. *See id.* (emphasis added). One's interests as a defendant in a lawsuit are necessarily different from one's interests as only a witness in that same suit, meaning Peterson's interests changed when his status changed from defendant to witness. Once that change of interests occurred, it was incumbent upon the district court to re-evaluate whether Peterson's interests were still materially adverse to the Newtons'. The court's conclusory assertion, in denying the Motion to Determine, that "[i]nterests of the Newtons are adverse to [Peterson's] interests even though he is not a party in the present case," is inadequate. It fails to account for the

changed status of Peterson from a party to a non-party and instead rests on its earlier finding of materially adverse interests. Continued reliance on its earlier order, even when the circumstances supporting that order had changed, constitutes an abuse of discretion. We thus reverse the district court's refusal to alter its order disqualifying the Firm.[10]

CONCLUSION

¶28   The district court clearly erred in finding that there was a substantial relationship between the present case and Peterson's 2002 case and, thus, in disqualifying the Firm based on that erroneous finding. Furthermore, it abused its discretion by relying on an erroneous legal premise in declining to alter or vacate the disqualification order. We therefore reverse and remand this case to the district court.

––––––––––

10. In light of our resolution of this issue, there is no need to address the district court's failure to weigh the effects of disqualification. Because the Firm should not have been disqualified, there is nothing to weigh.