*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 15**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Estate of STANLEY GOLDBERG
and SANDRA GOLDBERG,

C. LEON NELSON and MARILYNN TETRICK,
*Appellants*,

*v.*

KAREN GOLDBERG, THOMAS GOLDBERG, MARC GOLDBERG, ELAINA
FRIEDMAN, and MARTIN KRONE,
*Appellees*.

No. 20220372
Heard February 10, 2023
Filed June 6, 2024

On Appeal of Interlocutory Order*

Third District, Salt Lake County
The Honorable Richard D. McKelvie
No. 123901770

Attorneys:

Ryan B. Hancey, Adam L. Grundvig, J. Adam Knorr, Salt Lake City,
for appellants

Cameron L. Sabin, Joshua Cutler, Salt Lake City, for appellees

---

\* The appellants—along with their attorneys, Kesler & Rust, P.C. and Law Office of Thomas B. Nelson—also petitioned this court for extraordinary relief under rule 65B of the Utah Rules of Civil Procedure. That petition was consolidated with the petition for interlocutory appeal. In light of our resolution of the interlocutory appeal, the petition for extraordinary relief is denied as moot.

JUSTICE HAGEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE POHLMAN, and JUDGE CORNISH joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE PEARCE does not participate herein; DISTRICT COURT JUDGE RITA M. CORNISH sat.

---

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1 C. Leon Nelson and Marilynn Tetrick hired legal counsel to assist them in their duties as trustees of the Stanley and Sandra Goldberg Trusts. Years later, the same attorneys defended them in a lawsuit brought by several of the trusts' beneficiaries. After a jury found that the trustees had breached their fiduciary duties to the trusts, the district court entered a roughly $1.8 million judgment against them, most of which was payable to the trusts. At the beneficiaries' request, the court then removed the trustees and appointed successor trustees.

¶2 Meanwhile, the former trustees—still represented by the same attorneys—asked the court to reduce the amount of the judgment against them. The beneficiaries opposed that request, and the successor trustees moved to disqualify the former trustees' attorneys, arguing that a conflict had surfaced under rule 1.9(a) of the Utah Rules of Professional Conduct. Under rule 1.9(a), a lawyer who has represented a client in one matter may not later—"in the same or a substantially related matter"—represent another person whose interests are "materially adverse" to the former client's interests, absent written consent. UTAH R. PRO. CONDUCT 1.9(a).

¶3 In the successor trustees' view, the attorneys had represented the trusts in the litigation brought by the beneficiaries. The successor trustees therefore argued that the attorneys were precluded from assisting the former trustees in attempting to reduce the judgment because doing so would defy the interests of the trusts—their former clients. The district court agreed and disqualified the attorneys.

¶4 On appeal, the former trustees contend that the district court erred in finding a disqualifying conflict under rule 1.9(a). They argue that the court misread our caselaw to mean that if attorneys represent a trustee, they necessarily represent the trust. According to the former trustees, their attorneys represented them alone in defending against the beneficiaries' claims, so rule 1.9(a) does not prohibit those

attorneys from continuing to advocate their interests as the case evolves.

¶5 We reverse. Although under our caselaw an attorney can represent a trust, such an attorney-client relationship does not arise merely because an attorney represents a trustee. In the beneficiaries' suit against the former trustees, the attorneys represented the former trustees only, not the trusts, which were not named in the suit. Thus, because the attorneys never represented the trusts in the litigation, rule 1.9(a) does not prevent the attorneys from continuing to represent the former trustees.

## BACKGROUND

¶6 Decades ago, siblings Stanley and Sandra Goldberg created two trusts in their names. As amended, the trusts named dozens of beneficiaries, two of which—C. Leon Nelson and Marilynn Tetrick— became co-trustees in 2015 after Stanley and Sandra passed away.

¶7 Soon afterward, the trustees retained Thomas E. Nelson as legal counsel. At the start of the relationship, Mr. Nelson stated in an engagement letter that he did "not represent the beneficiaries" of the trusts; he represented the trustees "only . . . in [their] capacity as . . . trustees." Mr. Nelson explained in the letter that he would, among other things, assist the trustees "in administering the [trusts] and ultimately distributing" the trusts' assets. He also agreed to advise them "on any related questions or matters arising out of the administration of the . . . trusts." Under the engagement letter's terms, Mr. Nelson would bill the trustees monthly for his work.

¶8 A few months later, the trustees retained a separate law firm, Kesler & Rust, which, like Mr. Nelson, represented them in their "capacities as . . . trustee(s) of the [trusts]." Kesler & Rust stated in its engagement letter that it would be "co-counsel" with Mr. Nelson and that it had been tasked with researching the validity of recent trust amendments and preparing for possible litigation on that question.

¶9 The trustees' administration of the trusts was rife with disputes. A few years after Leon and Marilynn became trustees, several beneficiaries sued them for breach of fiduciary duty in both their individual and official capacities. The beneficiaries' claims were substantial; they alleged that the trustees had engaged in self-dealing, malfeasance, and tax fraud, among other things. The trustees' actions, the beneficiaries asserted, harmed both the beneficiaries and the trusts. As a result, the beneficiaries asked for damages from the trustees "individually." They also sought the return of money from the trustees "to the Trust[s]."

3

¶10 The case went to trial, where Mr. Nelson and Kesler & Rust represented the trustees in defending against the beneficiaries' claims. After hearing the evidence, the jury was tasked with deciding whether the trustees had breached their fiduciary duties in administering the trusts. The court instructed the jury that if it found a breach, it "must determine what amount will fairly and adequately compensate the Trust[s] for the harm caused by that breach."

¶11 The jury found the trustees liable for their actions, and the district court entered a judgment of over $1.8 million against them personally. Under the court's order, most of that money was "to be paid to the Trusts."

¶12 The beneficiaries then asked the court to remove the trustees. The court obliged and appointed successor trustees in their place.

¶13 The now-former trustees, still represented by Mr. Nelson and Kesler & Rust, moved to alter or amend the judgment, arguing that the court should reduce the judgment in favor of the trusts by several hundred thousand dollars. The beneficiaries opposed the motion, and the newly appointed successor trustees moved to disqualify Mr. Nelson and Kesler & Rust under rule 1.9(a) of the Utah Rules of Professional Conduct.

¶14 Rule 1.9(a), which governs an attorney's duties to former clients, provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

UTAH R. PRO. CONDUCT 1.9(a). The successor trustees argued that under *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, 299 P.3d 1058, attorneys retained by trustees "have an attorney-client relationship with the trust itself," meaning that the attorneys had represented not just the former trustees but also the trusts during trial. (Citing *id.* ¶¶ 29–32.) In the successor trustees' view, when the former trustees moved to alter or amend the judgment that stood to benefit the trusts, their interests and the trusts' interests became adverse. The successor trustees argued that the attorneys should be disqualified because it would violate rule 1.9(a) to allow them to continue representing the former trustees "in this case (*i.e.*, the same case), even though their clients' individual positions are materially adverse to the interests of the Trusts (their former client)." The successor trustees

emphasized, "[W]e are not dealing with different matters; this is the same matter. In fact, it is the same lawsuit, and the Former Trustees are seeking to reduce the judgment awarded to the Trusts in *this lawsuit*, and they are seeking to recover their attorney fees relating to *this lawsuit*." (Emphases in original.)

¶15 For their part, the former trustees argued that no attorney-client relationship had formed between the attorneys and the trusts. They explained that other jurisdictions had recognized "two disparate attorney-client views" in trust-related matters: an attorney hired by a trustee represents *either* the trustee *or* the trust itself (and its beneficiaries). But "[r]ather than pick either view," the former trustees asserted that Utah law merely requires attorneys to "make clear [their] relationship to the parties involved." And, pointing to the engagement letters, the former trustees argued that their attorneys had "expressly identif[ied] [their] clients as the fiduciaries themselves—not the Trusts, and not the beneficiaries." While acknowledging that the attorneys had defended the former trustees in both their individual and official capacities, the former trustees still rejected the idea that their attorneys "automatically represented the Trusts or beneficiaries, which are separate legal persons."

¶16 As to *Lindberg*, the former trustees argued that the case "has no precedential value" because it was later "repudiate[d]" in *M.J. v. Wisan*, 2016 UT 13, 371 P.3d 21. In the alternative, the former trustees argued that *Lindberg* stands for the more limited proposition that an attorney establishes an attorney-client relationship with a trust only by "specifically enter[ing] an appearance on [its] behalf." So because the attorneys here "never entered an appearance for the Trusts" in the beneficiaries' lawsuit, the former trustees argued that *Lindberg* is distinguishable, regardless of its precedential value.

¶17 The district court ruled that the circumstances created a conflict under rule 1.9(a) of the Utah Rules of Professional Conduct. As an initial matter, the court observed that the parties agreed that if a conflict had arisen, it emerged "during the course of the present litigation." The court also noted the parties' agreement that the former trustees' motion to alter or amend was "materially adverse to . . . the [interests of the] Trusts."

¶18 As the district court saw it, the remaining question under rule 1.9(a) was whether the former trustees' counsel represented the trusts in the litigation. The court answered in the affirmative. Under *Lindberg*, the district court stated, "in establishing an attorney-client relationship with a trustee, an attorney establishes an attorney-client relationship with the corresponding trust." (Citing 2013 UT 15, ¶ 29.)

¶19 The district court gave two pieces of factual support for its conclusion that an attorney-client relationship existed between the attorneys and the trusts. First, the trusts had not been "represented by counsel in this matter." And second, the attorneys had "repeatedly argued on behalf of . . . the Trusts in this matter."

¶20 The district court thus concluded that because the attorneys had represented the trusts earlier in the case, their continued representation of the former trustees clashed with rule 1.9(a). The district court concluded that this conflict, coupled with the fact that the attorneys were "privy to confidential information," warranted the attorneys' disqualification as a sanction.

¶21 The former trustees filed a petition for interlocutory appeal, which we granted.

## ISSUES AND STANDARDS OF REVIEW

¶22 The former trustees ask us to reverse the district court's order disqualifying their attorneys from representing them further in this case. We review a district court's interpretation of the Rules of Professional Conduct "for correctness." *See Long v. Ethics & Discipline Comm. of the Utah Sup. Ct.*, 2011 UT 32, ¶ 24, 256 P.3d 206 (cleaned up). Once an ethical violation has been shown, we typically extend broad discretion to district courts in "deciding whether disqualification is a proper sanction." *Houghton v. Dep't of Health*, 962 P.2d 58, 61 (Utah 1998) (cleaned up), *overruled on other grounds by Ark. Dep't of Health & Hum. Servs. v. Ahlborn*, 547 U.S. 268 (2006).

¶23 The parties also urge us to award attorney fees on appeal, an issue we decide in the first instance.

## ANALYSIS

¶24 The former trustees maintain that the district court erred in determining that rule 1.9(a) of the Utah Rules of Professional Conduct demands their attorneys' disqualification. They contend that the district court misinterpreted *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, 299 P.3d 1058, as holding that an attorney representing a trustee necessarily has an attorney-client relationship with the underlying trust.[1] And they insist that under a proper reading of

---

[1]    Alternatively, the former trustees ask us to overrule *Lindberg* or at least clarify that because *Lindberg* concerned a charitable trust, its reasoning does not apply in cases concerning traditional trusts like those at issue here. But because we accept their principal argument, we do not address these alternative bases for reversal.

*Lindberg*, their attorneys did not represent the trusts when defending them against the beneficiaries' claims. That being the case, the former trustees reason that rule 1.9(a) is inapplicable and that their counsel should be permitted to continue representing them in the litigation.

¶25 We agree. *Lindberg* recognizes that an attorney-client relationship can exist between an attorney and a trust. But whether such a relationship exists depends on context; it does not automatically follow from the attorney's representation of the trustee. Here, the context shows that the attorneys did not formerly represent the trusts in the relevant matter—the litigation between the beneficiaries and the former trustees—and rule 1.9(a) does not apply. Accordingly, the district court erred in granting the successor trustees' motion to disqualify.

¶26 Below we explain the interplay between *Lindberg* and rule 1.9(a), then apply the correct standard to the circumstances of this case. Lastly, we address the issue of appellate attorney fees.

### I. THE DISTRICT COURT ERRED IN DISQUALIFYING COUNSEL UNDER RULE 1.9(a)

¶27 The district court disqualified the former trustees' attorneys under rule 1.9(a) of the Utah Rules of Professional Conduct. That rule provides that, absent written waiver, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." UTAH R. PRO. CONDUCT 1.9(a). This type of conflict is generally imputed to other attorneys within the same firm. *See id.* R. 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] . . . 1.9 . . . .").

¶28 "Rule 1.9 was intended to prevent the betrayal of a professional trust arising out of the lawyer-client relationship." *Houghton v. Dep't of Health*, 962 P.2d 58, 61 (Utah 1998), *overruled on other grounds by Ark. Dep't of Health & Hum. Servs. v. Ahlborn*, 547 U.S. 268 (2006). It sensibly "prevent[s] the possibility that an attorney might use information given in confidence by a former client in a later action against that client." *Margulies ex rel. Margulies v. Upchurch*, 696 P.2d 1195, 1202 (Utah 1985). And it facilitates "the free exchange of information between attorney and client which our legal system presupposes." *Id.*

¶29 Rule 1.9(a) applies only if three conditions are met. Here, we must evaluate whether the attorneys (1) "formerly represented" the

trusts (2) "in the same or a substantially related matter" (3) in which the former trustees' interests are "materially adverse" to those of the trusts. *See* UTAH R. PRO. CONDUCT 1.9(a). Because *Lindberg* informs the first part of the rule 1.9(a) inquiry, we begin by clarifying the scope of its holding. We then apply rule 1.9(a) to the facts of this case.

*A. Under* Lindberg, *an Attorney Can Represent a Trust, but Whether an Attorney-Client Relationship Exists Depends on Context*

¶30 In deciding that the attorneys represented the trusts, the district court stated that, under *Lindberg*, "establishing an attorney-client relationship with a trustee . . . establishes an attorney-client relationship with the corresponding trust." (Citing 2013 UT 15, ¶ 29, 299 P.3d 1058.) From this, the former trustees gather that the district court misunderstood *Lindberg* to mean that any time an attorney represents a trustee, the attorney "automatically" represents the trust as well. According to the former trustees, if the district court had correctly understood *Lindberg*, it would not have found an attorney-client relationship between the attorneys and the trusts.

¶31 The former trustees are correct that *Lindberg* did not create a per se rule that an attorney representing a trustee necessarily represents the corresponding trust. In *Lindberg*, the court-appointed successor trustee of a reformed charitable trust subpoenaed documents from the law firm of Snow, Christensen & Martineau (SCM), which had entered an appearance in an earlier action as counsel for the trust prior to the trust's reformation. *See* 2013 UT 15, ¶¶ 7, 14. SCM refused to comply, arguing that the requested documents contained privileged attorney-client information and that the reformed trust was "not the same entity" as the trust it represented. *See id.* ¶ 14. But after the successor trustee attempted to sell trust property, beneficiaries of the trust "hired SCM to represent them in their efforts to prevent the sale." *Id.* ¶ 15. As in the case before us, the successor trustee moved to disqualify counsel under rule 1.9, arguing that SCM's prior representation of the trust precluded it from challenging the sale on the beneficiaries' behalf. *See id.* The district court granted the successor trustee's motion to disqualify and ordered SCM to produce the subpoenaed documents. *See id.* ¶¶ 14, 16.

¶32 On appeal, SCM made two arguments. First, it argued that "charitable trusts are not entities capable of entering into an attorney-client relationship or holding a privilege." *Id.* ¶ 27. So even though SCM had ostensibly represented the trust in the past, SCM asserted that "the only attorney-client relationship created by [the] prior representation . . . was between SCM and the former trustees"—who had since been replaced by the successor trustee. *Id.* Consequently,

SCM argued that the successor trustee could not seek privileged information that SCM had received from the former trustees and that nothing prevented SCM from later representing the beneficiaries in challenging the sale. *See id.* Second, SCM argued that even if an attorney-client relationship existed between SCM and the trust, SCM could not be disqualified from the litigation involving the reformed trust because it was not the same client as the trust that SCM represented. *Id.*

¶33 We rejected the premise of SCM's first argument—that the trust was incapable of forming an attorney-client relationship and holding the attendant privilege. *See id.* ¶¶ 29–33. We discussed how rule 504 of the Utah Rules of Evidence presupposes that a trust "is capable of forming an attorney-client relationship." *Id.* ¶ 33; *see also id.* ¶¶ 30–32 (citing UTAH R. EVID. 504(a)(1), (b)(1), (c)(4)). And we explained that, under that rule, "it is the trust that holds the actual privilege and the trustee"—as its fiduciary—"who claims the privilege on behalf of the trust." *Id.* ¶ 32.

¶34 But we ultimately agreed with SCM's second argument—that the trust's reformation "so changed its purpose and identity" that it effectively became a different entity from the one SCM had represented. *See id.* ¶ 43. We explained that the court's reformation of the trust functioned like an asset purchase and that the attorney-client relationship did not carry over. *See id.* ¶ 48. Viewed this way, SCM was prohibited from sharing privileged information with the successor trustee. *Id.* ¶¶ 50–52. And because the reformed trust was effectively a new entity, SCM had no conflict under rule 1.9 preventing it from continuing to represent the beneficiaries in challenging the sale. *See id.* ¶¶ 53–55.

¶35 Two justices dissented from the majority's "legal fiction" that the reformed trust was a different entity, *id.* ¶ 65 (Durrant, C.J., concurring in part and dissenting in part), and a few years later, in *M.J. v. Wisan*, 2016 UT 13, 371 P.3d 21, we confined *Lindberg*'s asset-purchase analogy to the specific facts of that case, *see id.* ¶¶ 21–29 & n.5. But we did not disturb the point of law on which both the majority and dissent agreed: "a trust may be an attorney's client." *Lindberg*, 2013 UT 15, ¶ 57 (Durrant, C.J., concurring in part and dissenting in part); *id.* ¶¶ 32–33; *see also Wisan*, 2016 UT 13, ¶¶ 21–29 & ¶ 29 n.5.

¶36 To the extent the district court here assumed that an attorney automatically represents a trust whenever he or she represents a person who serves as its trustee, the court misread *Lindberg*. Elsewhere in its ruling, however, the court stated that under Utah law,

"an attorney *may* establish an attorney-client relationship with a trust." (Emphasis added.) That is accurate. Under *Lindberg*, an attorney can establish an attorney-client relationship with a trust. *See* 2013 UT 15, ¶¶ 29–33. But context ultimately determines whether such a relationship exists.

*B. The Attorneys Did Not Represent the Trusts in the Litigation Between the Beneficiaries and the Former Trustees*

¶37 We now turn to the question of whether an attorney-client relationship arose here between the attorneys and the trusts under rule 1.9(a) of the Rules of Professional Conduct. Recall that rule 1.9(a) applies only when three criteria are met. *See* UTAH R. PRO. CONDUCT 1.9(a). Here, we must assess whether the attorneys (1) "formerly represented" the trusts (2) "in the same or a substantially related matter" (3) in which the former trustees' interests are "materially adverse" to those of the trusts. *See id.* Noting the parties' agreement that the second and third criteria were met, the district court focused on the first criterion and concluded that the attorneys formerly represented the trusts.

¶38 The district court gave two fact-based reasons why, in its view, the attorneys formerly represented the trusts. First, the court found it significant that the trustees conceded that "the Trusts have not been represented by counsel in this matter." Second, the court concluded that "[t]hroughout the present litigation, counsel for the Former Trustees have argued on behalf of both the Former Trustees and the Trusts." As evidence of its second point, the court cited two documents: (1) the former trustees' opposition to the beneficiaries' request for a distribution of trust assets (Distribution Opposition), and (2) their opposition to the beneficiaries' request to remove the former trustees (Removal Opposition).

¶39 These reasons are unconvincing. To begin, the trusts were not represented by counsel in the litigation for the simple reason that they were not a party. The beneficiaries sued only the former trustees. The attorneys never entered an appearance as counsel for the trusts, and the former trustees' filings indicated their attorneys represented them alone.

¶40 Nor did the attorneys advocate for the trusts in the litigation. At bottom, the case pitted the former trustees, on the one hand, against the beneficiaries and the trusts, on the other. The beneficiaries sought redress for harm that the former trustees inflicted on the beneficiaries and the "Trust corpus." If the jury agreed that the former trustees committed torts and breached their fiduciary duties, the

former trustees would be on the hook personally, paying damages to "the . . . Beneficiaries" and returning money "to The Trust[s]."

¶41 Sure enough, that is precisely what happened. The jury sided with the beneficiaries, who were "awarded monetary judgment in their favor and against Defendants C. Leon Nelson and Marilynn Tetrick in . . . a total amount of $1,820,185.70 to be paid to the Trusts." If anyone advocated on behalf of the trusts' interests throughout the case, it was the beneficiaries, who sought to increase the trusts' assets by recovering damages from the former trustees, and not the former trustees themselves, who wanted to avoid personal liability.

¶42 The two documents the district court referenced do not persuade us to conclude otherwise. The Distribution Opposition was filed in the probate case *before* the beneficiaries sued the former trustees, a distinction that matters because rule 1.9(a) instructs us to determine whether the attorneys formerly represented the trusts "in the same or a substantially related matter." The successor trustees asked the court to remove the attorneys under rule 1.9(a) based on the attorneys' alleged prior representation of the trusts "in this case (*i.e.*, the same case)." The successor trustees emphasized that "it is the same lawsuit, and the Former Trustees are seeking to reduce the judgment awarded to the Trusts in *this lawsuit*, and they are seeking to recover their attorney fees relating to *this lawsuit*." (Emphases in original.) The Distribution Opposition, therefore, has no bearing under rule 1.9(a) on whether the attorneys represented the trusts in the litigation between the beneficiaries and the former trustees.

¶43 As for the Removal Opposition—which, unlike the Distribution Opposition, was filed after the beneficiaries sued the former trustees—the district court accurately noted that in that document, the former trustees contended that their removal as trustees would not "serve . . . the material purposes of the Trusts." In context, however, it is apparent that the former trustees were merely rebutting the beneficiaries' argument that the court should remove Leon and Marilynn under Utah Code section 75-7-706, because removal was "'not inconsistent with' a material purpose of the trust[s]." *See* UTAH CODE § 75-7-706(2)(d) ("The court may remove a trustee if . . . the court finds that removal of the trustee . . . is not inconsistent with a material purpose of the trust . . . ."). So when the former trustees asserted in the Removal Opposition that removal would not "serve . . . the material purposes of the Trusts," they were not advocating on the trusts' behalf; they were simply invoking relevant statutory language to defend against the allegation that their service as trustees harmed the trusts.

¶44 On appeal, the successor trustees do not rely on the facts cited by the district court and instead attempt to justify its ruling on alternate grounds. In their view, an attorney represents a trust when the attorney is "retained to assist in trust administration" and "paid with trust funds." The successor trustees argue that because the attorneys advised on trust administration and were compensated with trust funds, they must have represented the trusts. And, the successor trustees add, the attorneys' engagement letters "further evidence" an attorney-client relationship between the attorneys and the trusts.

¶45 Although the record does indicate that the attorneys (or at least Mr. Nelson) advised Leon and Marilynn in administering the trusts, rule 1.9(a) is not concerned with whether the attorneys ever represented the trusts, but only with whether they represented the trusts "in the same or a substantially related matter." And the parties agreed below that the relevant matter was "the same lawsuit." That means that the relevant period did not begin until the beneficiaries sued the former trustees for breach of fiduciary duty. And during that period, the attorneys' loyalty remained constant. From the start, the attorneys defended the former trustees against claims of malfeasance, for which the beneficiaries sought—on behalf of the trusts—money from the former trustees individually. Even assuming that the attorneys represented the trusts when assisting the former trustees with trust administration, that representation did not involve "the same or a substantially related matter" as the successor trustees defined it below.

¶46 The successor trustees' assertion that attorney fees were paid with trust funds does not change the calculus. As an initial matter, the engagement letters are unclear about who was responsible for paying attorney fees, and the district court made no findings on this point. But even if the attorneys were paid with trust funds, that fact is not determinative. The decisive factor, rather, is the attorneys' role in the representation. *See* RESTATEMENT (THIRD) OF TRUSTS § 82 cmt. f (AM. L. INST. 2007) ("If the lawyer is to be paid out of trust funds[,] that suggests (but does not finally determine) that the lawyer will be involved in the administration of the trust . . . . If the lawyer is paid out of the trustee's personal funds, that suggests (but does not finally determine) that the lawyer will be watching out for the personal interests of the trustee . . . ."). Even assuming that the former trustees used trust funds to pay attorney fees, that fact standing alone does not establish an attorney-client relationship with the trusts.

¶47 The engagement letters, too, are ambiguous at best. Neither letter contains any indication that the attorneys were retained to represent the trusts. The attorneys did, however, affirmatively state that they did not represent the trusts' beneficiaries, suggesting they may have intended to represent the former trustees only. If that was their intention, they would have had at least some backing from the Utah Rules of Professional Conduct. Comment 27 to rule 1.7 provides,

> In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view, the client is the estate or trust, including its beneficiaries. In order to comply with conflict of interest rules, the lawyer should make clear the lawyer's relationship to the parties involved.

Had the attorneys turned to this comment when preparing the engagement letters, they reasonably could have seen two choices: they would represent either (1) the former trustees or (2) the trusts, including their beneficiaries.

¶48 The engagement letters suggest that the attorneys tried to make clear their relationship to the parties involved. Under the heading "Identification of the Client," Mr. Nelson informed the former trustees, "You should understand we represent . . . both of you as trustees . . . . We do not represent the beneficiaries." And although Kesler & Rust's engagement letter did not expressly convey that the firm did not represent the beneficiaries, it specified that the firm represented the former trustees "in [their] capacities as . . . trustee(s)" as "co-counsel with . . . attorney [Mr.] Nelson." So while we see some ambiguity in the engagement letters, we disagree with the successor trustees that the letters evince an attorney-client relationship with the trusts.

¶49 Under these circumstances, we hold that the district court erred in concluding that the attorneys represented the trusts under rule 1.9(a). Throughout the lawsuit, the attorneys consistently challenged the beneficiaries' allegations and defended against claims that the former trustees were liable for damages payable to the trusts. Because the attorneys did not formerly represent the trusts in this

case, rule 1.9(a) does not apply. Therefore, the district court erred in disqualifying the attorneys based on the perceived conflict.[2]

## II. WE DECLINE TO AWARD ATTORNEY FEES ON APPEAL

¶50 Both sides separately request an award of attorney fees under Utah Code subsection 75-7-1004(1). We deny these requests.

¶51 Even though this is an interlocutory appeal, this court has discretion to award fees. "This court has interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them." *Westgate Resorts, Ltd. v. Adel*, 2016 UT 24, ¶ 33, 378 P.3d 93 (cleaned up). This is true even where no attorney fees were awarded below. *See id.* In this case, an award of attorney fees is authorized by statute:

> In a judicial proceeding involving the administration of a trust, the court may, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

UTAH CODE § 75-7-1004(1).

¶52 In *Shurtleff v. United Effort Plan Trust*, 2012 UT 47, 289 P.3d 408, we adopted a nonexclusive list of factors to consider when determining whether to award attorney fees under Utah Code subsection 75-7-1004(1). *See id.* ¶ 23; *see also Ragsdale v. Fishler*, 2021 UT 29, ¶ 60, 491 P.3d 835. We explained that the factors

> include (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

*Shurtleff*, 2012 UT 47, ¶ 23 (cleaned up).

---

2    After concluding that a conflict arose under rule 1.9(a), the district court went on to evaluate whether the former trustees' attorneys should be disqualified as a sanction. The court concluded "disqualification . . . is warranted," in part because the attorneys "were privy to confidential information." But because we hold that the circumstances do not create a conflict under rule 1.9(a), we have no need to decide whether the district court abused its discretion in sanctioning the attorneys through disqualification.

¶53 The successor trustees do not address these criteria. They request an award of attorney fees because the former trustees "have seriously breached their fiduciary duties" and because the former trustees and their attorneys have refused to produce their client file. Even if those things are true, the successor trustees' argument gives us an insufficient basis to award attorney fees under subsection 75-7-1004(1) and the *Shurtleff* criteria.

¶54 For their part, the former trustees request attorney fees because they "have asserted reasonable claims, have not unnecessarily prolonged this appeal, and have not acted in bad faith." But merely parroting our criteria is likewise insufficient. We are not persuaded that "justice and equity . . . require" us to award the former trustees their attorney fees on appeal. *See* UTAH CODE § 75-7-1004(1).

## CONCLUSION

¶55 The district court erred in concluding that the former trustees' attorneys also represented the trusts in the same or a substantially related matter. It therefore erred in disqualifying the attorneys based on a perceived violation of rule 1.9(a) of the Utah Rules of Professional Conduct. And because neither side has carried its burden of persuasion in seeking appellate attorney fees, we decline to award them. Reversed.

———